IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| v. | | Criminal Action No. 19-286 |
| DEREK CROSBY,<br>*Defendant* | | |

### MEMORANDUM

This Memorandum resolves a "Motion For Review Of Detention Order" (the "Appeal") filed by defendant Derek Crosby on July 15, 2020.  ECF 591.  He challenges the ruling of U.S. Magistrate Judge A. David Copperthite on April 5, 2020 (ECF 415), ordering Crosby's detention pending trial.  ECF 82.  The government opposes the Appeal.  ECF 599.  Crosby has not replied within the expedited time informally established for appeals of this type.

No hearing is necessary to resolve the Appeal.  *See* Local Rule 105.6.[1]  For the reasons that follow, I shall deny the Appeal.

### I.    Procedural Background

On June 11, 2019, a grand jury sitting in the District of Maryland returned a 17-count Indictment against Crosby and 18 codefendants.  ECF 23.  In particular, Crosby was charged in Count One with conspiracy to possess with intent to distribute one kilogram or more of heroin, five kilograms of cocaine, 280 grams of cocaine base, and fentanyl, in violation of 21 U.S.C. § 846.  *Id.* at 2-3.  Soon after, on June 25, 2019, a Superseding Indictment was filed (ECF 96),

---

[1] Although the Bail Reform Act does not address whether a defendant is entitled to an in-court hearing on an appeal of detention, Judge Grimm assessed the issue recently and found "ample authority for the conclusion that the Court may decide the motion on the filings . . . as opposed to a hearing."  *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).

naming 25 defendants and containing 30 Counts.  Crosby is charged in Count One, *supra*, as well as Count Seven, charging possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922 (g)(1).

The conspiracy count carries a sentence ranging from a mandatory minimum of 10 years to a maximum of life imprisonment.  The charge of unlawful possession of a firearm carries a 10-year maximum sentence, unless a defendant is an armed career criminal.

Defendant was arrested on June 20, 2019, after law enforcement executed a search warrant at his residence and  stash house, both of which were located in Baltimore, Maryland.  According to the government, investigators recovered a stolen firearm from a vehicle registered to defendant, and from the stash house they recovered approximately 677 grams of a fentanyl and heroin mixture, and approximately 2.4 grams of crack cocaine.  ECF 599 at 2.

Crosby appeared at a detention hearing before Judge Copperthite on June 21, 2019. ECF 69.   At that time, the Superseding Indictment had not yet been filed.  Applying the factors set forth in 18 U.S.C. § 3142, Judge Copperthite found by clear and convincing evidence that Crosby posed a risk to the safety of other persons and the community and that there was no condition or combination of conditions that would reasonably assure community safety.  ECF 82. In addition to the presumption of detention triggered by defendant's charges, Judge Copperthite found other factors weighed in favor of detention: Crosby had prior drug and firearm convictions, he was accused of possessing large quantities of drugs, the weight of the evidence against Crosby was "strong," and Crosby was under State supervision at the time of the alleged conspiracy.  *Id.*

As noted, a Superseding Indictment was returned on June 25, 2019, in which Crosby was again charged in Count One with conspiracy to distribute more than one kilogram of heroin, more than five kilograms of cocaine, more than 280 grams of crack, and a detectable amount of fentanyl,

in violation of 21 U.S.C. § 846, and in Count Seven, with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g).  ECF 96, 10.

Defendant appealed Judge Copperthite's Order on October 9, 2019.  ECF 329.  After a *de novo* hearing held on October 18, 2019, I denied defendant's request for release.  ECF 333.

On March 27, 2020, Crosby asked Judge Copperthite to reconsider his initial order of detention in light of the COVID-19 pandemic.  ECF 411.  Crosby argued that the measures implemented at Chesapeake Detention Facility ("CDF"), where he was detained, were insufficient to protect inmates from the virus.  *Id.* ¶¶ 2-4.  Further, Crosby maintained that he was "at increased risk for death or morbidity from coronavirus due to his health history," which he claimed includes asthma and a bout with pneumonia in 2018.  *Id.* ¶ 6.

Judge Copperthite denied Crosby's request in a Memorandum and Order of April 2, 2020. ECF 415.  He noted that Crosby "d[id] not challenge the Order of detention based upon the previous factors set forth in § 3142(g) nor the Court's analysis of the danger [that he] posed to the public." *Id.* at 2.  Rather, Crosby asserted only that "the current outbreak of COVID-19" warranted his release from custody.  *Id.*  However, based on "an individualized assessment" of Crosby's case, Judge Copperthite concluded that he was not eligible for home confinement.  *Id.*

Crosby "was engaged in a chronic plague of drug trafficking," Judge Copperthite observed, and the evidence against Crosby "was extremely strong" in light of wiretap recordings and the drugs, drug trafficking paraphernalia, and firearms recovered from Crosby's vehicle and residence. *Id.* at 2-3.  Judge Copperthite reasoned that these facts "weigh[ed] heavily in favor of detention," opining that "there is no greater danger to the community than armed drug traffickers."  *Id.* at 3. Judge Copperthite acknowledged the threat posed by the novel coronavirus.  *Id.*  But, having "fully

3

considered the impact of COVID-19," he determined that it did not outweigh those factors militating in favor of Crosby's detention.  *Id.*

Crosby remains detained at CDF.  This Appeal followed July 15, 2020.  ECF 591.

## II.   Standard of Review

Ordinarily, a defendant should not be detained pending trial.  *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 *et seq*., governs the release or detention of a defendant pending trial.

As is relevant here, the government may move for a defendant's pretrial detention if the case involves certain controlled substance offenses.  *Id.* § 3142(f)(1)(C).  If the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).  The test is disjunctive; a finding on either ground compels the defendant's detention.  *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987).  But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence, whereas the defendant's danger to the community must be proven by clear and convincing evidence.  *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

In deciding whether detention is necessary, the court "is not given unbridled discretion." *Salerno*, 481 U.S. 742.  Rather, the Act directs the court to "take into account the available information concerning" four factors.  18 U.S.C. § 3142(g).  Those factors include, *id.*:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

Of relevance here, when the defendant is charged with certain crimes there is a presumption in favor of detention. Specifically, the Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community if . . . there is probable cause to believe that the person committed" one of an enumerated list of crimes, including a crime carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, or a violation of 18 U.S.C. 924(c).  18 U.S.C. § 3142(e)(2).  For purposes of making that determination, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is

charged." *Stone*, 608 F.3d at 945; *see United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C. 2014).

Once the presumption is triggered, "the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case." *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007); *see also United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). To do so, the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption. *Stone*, 608 F.3d at 945-46 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)). If the defendant offers evidence to counter the presumption, it does not fall out of the picture entirely but rather remains a factor in the court's totality-of-the-circumstances analysis. *See Stone*, 608 F.3d at 945; *see also United States v. Mattis*, ___ F.3d ___, 2020 WL 3536277, at *4 (2d Cir. June 30, 2020); *Taylor*, 289 F. Supp. 3d at 64.

Section 3142(i) of the Act provides a distinct statutory basis for pretrial release. Under § 3142(i), the court may "permit the temporary release of [a] person" to "the custody of a United States marshal or another appropriate person," if the court determines that pretrial release is "necessary for preparation of the person's defense or for another compelling reason." As other courts have observed, claims predicated on § 3142(i) have historically involved claims that release was necessary for the preparation of the defendant's defense or where the defendant suffered from a serious medical condition. *See, e.g.*, *United States v. Clark*, ___ F. Supp. 3d ___, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020); *United States v. Stephens*, ___ F. Supp. 3d ___, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See Stephens*, 2020 WL 1295155, at *3. Notably, courts have invoked § 3142(i)

parsimoniously and only for truly extraordinary circumstances. *Compare United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993) (granting temporary release where the defendant had sustained a gunshot wound to the head and would "shortly die" from AIDS), with *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (denying temporary release where the defendant disclosed that he had a hernia but did not explain why correctional authorities could not capably provide treatment).  In the context of the COVID-19 pandemic, the Fourth Circuit has suggested that § 3142(i) requires evaluating whether "the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, . . . balanced against the other Bail Reform factors, rises to the level of a 'compelling reason'" justifying release.  *United States v. Creek*, CCB-19-36, App. No. 20-4251, at *1 (4th Cir. Apr. 15, 2020).  Put different, a court must ask "'whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors and the COVID-19 health risk to the community that Defendant's release could occasion.'"  *United States v. Gallagher*, SAG-19-479, 2020 WL 2614819, at *6 (D. Md. May 22, 2020) (citation omitted).

Of import here, the Act provides that a defendant "ordered detained by a magistrate judge, . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and "the motion  shall be determined promptly." *Id.* § 3145(b).  The district court reviews the magistrate judge's ruling *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 F. App'x at 48; s*ee also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).  In particular, the court must determine whether there are conditions of release that will reasonably assure the safety of the community.  In undertaking this examination, the court "'is free to use in its analysis any

evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'"  *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (citation omitted).

### III.    Discussion

Crosby moves for reconsideration of his detention under 18 U.S.C. §§ 3142(f) and 3142(i). ECF 591.  Although Crosby does not contest the presumption of detention, he challenges Judge Copperthite's conclusion that the weight of the evidence against him is strong, contending that the government's phone interceptions are "highly ambiguous."  *Id.* at 2.  Further, defendant "disputes that he was a supplier of drugs" and seeks to minimize the § 922(g) charge, positing that he "is not accused of using or carrying firearms."  *Id.* at 3.  Therefore, Crosby contends that his release to home confinement is appropriate, particularly in light of the COVID-19 pandemic.  *Id.* at 2-3.

I disagree.  Having considered the relevant factors, I find that no condition or combination of conditions of release would reasonably assure the safety of the community pending trial. Further, I conclude that the COVID-19 virus does not warrant Crosby's release.

Assessing the nature of the charges against Crosby and the weight of the evidence, I arrive at the same conclusion that I reached on October 18, 2019: Crosby poses a danger to the community if released.  Crosby is charged with conspiracy to distribute controlled substances and unlawful possession of a firearm.  These are serious offenses.  As Judge Copperthite observed in his Order of April 2, 2020, Baltimore had 348 homicides last year, and gun violence has continued to wrack the city despite the pandemic.  ECF 415 at 3; *see also United States v. Ratchford*, SAG-20-701, 2020 WL 3792209, at *4 (D. Md. July 7, 2020) (observing that "illegal gun possession is itself a serious offense, particularly in a city where gun violence, unfortunately, has become quotidian").  Indeed, by some metrics, gun violence in Baltimore has grown worse in the past few

months.  *See* Jessica Anderson, *The Coronavirus Pandemic and Surveillance Plane Have Not Stemmed Baltimore's Torrid Rate of Homicides This Year*, BALT. SUN (June 30, 2020), https://bit.ly/2WIVvhE.

The weight of the evidence further tilts in favor of detention.  The government proffers that law enforcement recovered a firearm as well as large quantities of drugs from Crosby's stash house and a vehicle, during search conducted on June 19, 2020.  ECF 599 at 6.  Thus, whatever the merits of defendant's contentions regarding the government wiretap evidence, there is compelling physical evidence implicating Crosby in drug trafficking activities.

Turning to Crosby's history and characteristics, his criminal history further illustrates the serious risk he poses to community safety.  To be sure, and as the government concedes, *see id.*, Crosby does not have a lengthy criminal record.  However, Crosby does have a prior narcotics and firearm conviction.  Moreover, Crosby was on State probation at the time of the charged offenses.  This factor counsels in favor of detention.  *See United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (examining likelihood of continued narcotics trafficking as part of danger to the community analysis).

Like other judges in this district, I recognize the unique threat posed by the COVID-19 pandemic, the worst the world has experienced since 1918.  *See United States v. Gray*, GJH-19-407, 2020 WL 1554392, at *1 (D. Md. Apr. 1, 2020); *United States v. Jefferson*, CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020); *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).  As of July 22, 2020, the coronavirus has infected nearly 4 million Americans and caused over 140,000 deaths.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed July 21, 2020).  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), asthma may be a risk factor

9

for experiencing severe illness from COVID-19.  *See Coronavirus Disease 2019 (COVID-19), At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (June 25, 2020), https://bit.ly/2WBcB16.

Moreover, I acknowledge that correctional facilities are ill-suited to prevent outbreaks and mitigate their spread.  *See, e.g.*, *United States v. Goss*, 15-cr-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020).  Because there is no vaccine or treatment for COVID-19, the only way to slow the spread of the virus is to practice "social distancing."  *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).  However, social distancing is particularly difficult in the penal setting.  Therefore, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See* Letter from Johns Hopkins Faculty to Gov. Hogan (Mar. 25, 2020) (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely").

The Court does not minimize Crosby's health concerns. However, as Magistrate Judge J. Mark Coulson recently observed, CDF has implemented extensive precautionary measures to protect staff and inmates, which appear to be working.  *See United States v. Washington*, No. 19-cr-00082-GLR-2, 2020 WL 4016239, at *3 (D. Md. July 16, 2020).  In fact, as of July 20, 2020, the Maryland Department of Public Safety and Correctional Services reported only five confirmed cases of COVID-19 among CDF detainees.  *See COVID-19 Case Count*,  MD. DEP'T OF PUB. SAFETY & CORR. SERVS. (July 20, 2020), https://bit.ly/3fNEtX6. This reflects a positivity rate of approximately 1.4 percent—significantly below the current state-wide average of roughly 4.5

percent. *See Coronavirus Disease* (*COVID-19) Outbreak*, MD. DEP'T OF HEATH (July 20, 2020), https://bit.ly/2CwtAKR.

Further, as Judge Hazel of this Court has observed in regard to the D.C. Jail, "COVID-19 is not a virus that has specifically attacked the D.C. Jail"—it is a "global pandemic that all citizens of the world are struggling to combat." *Gray*, 2020 WL 1554392, at *2. Simply put, the coronavirus is "not tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.).

Ultimately, upon assessing the § 3142(g) factors in light of the pandemic, I find that the pandemic Crosby's medical conditions, and the circumstances at CDF do not outweigh the serious nature of Crosby's alleged conduct, the weight of the evidence, and Crosby's criminal history. Accordingly, the pandemic does not serve as a compelling reason to release Crosby under § 3142(i). *See Gallagher*, 2020 WL 2614819, at *6-7 (concluding that § 3142(i) analysis tracked analysis under § 3142(f)).

### IV.     Conclusion

For the reasons stated above, I shall affirm Judge Copperthite's Order (ECF 415). Therefore, I shall deny Crosby's Appeal (ECF 591).

An Order follows, consistent with this Memorandum.


Date:   July__, 2020                                _____/s/_____
                                                                     Ellen Lipton Hollander
                                                                     United States District Judge

11